**LEE LITIGATION GROUP, PLLC**
C.K. Lee (CL 4086)
Anne Seelig (AS 3976)
148 West 24th Street, 8th Floor
New York, NY 10011
Tel.: 212-465-1188
Fax: 212-465-1181
*Attorneys for Plaintiff,*
*FLSA Collective Plaintiffs,*
*and the Class*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| POPY CHAIRAWATI,<br>*on behalf of herself,*<br>*FLSA Collective Plaintiffs, and the Class,*<br><br>　　　　Plaintiff,<br><br>　　　　　　v.<br><br>LA LIBRAIRIE KITCHEN & CAFE L.L.C.<br>　　　d/b/a LA LIBRAIRIE KITCHEN & CAFE,<br>LA LIBRAIRIE DES ENFANTS LLC<br>　　　d/b/a LA LIBRAIRIE DES ENFANTS, and<br>FADILA LYNDA OUHENIA-HUDSON<br>　　　a/k/a LYNDA HUDSON,<br><br>　　　　Defendants. | Case No.:<br><br>**CLASS AND COLLECTIVE**<br>**ACTION COMPLAINT**<br><br>Jury Trial Demanded |

Plaintiff, POPY CHAIRAWATI ("Plaintiff"), on behalf of herself and others similarly situated, by and through her undersigned attorneys, hereby files this Class and Collective Action Complaint against Defendants, (i) LA LIBRAIRIE KITCHEN & CAFE L.L.C. d/b/a LA LIBRAIRIE KITCHEN & CAFE, (ii) LA LIBRAIRIE DES ENFANTS LLC d/b/a LA LIBRAIRIE DES ENFANTS (together the "Corporate Defendants"), and (iii) FADILA LYNDA OUHENIA-HUDSON a/k/a LYNDA HUDSON (together the "Individual Defendant" and collectively with the Corporate Defendants, the "Defendants") and states as follows:

1

## INTRODUCTION

1.      Plaintiff alleges, pursuant to the Fair Labor Standards Act, as amended, 29 U.S.C. §§ 201 *et. seq.* ("FLSA"), that she and similarly situated individuals are entitled to recover from Defendants: (1) unpaid wages; (2) unpaid minimum wages, including overtime, due to a fixed salary scheme; (3) unpaid wages, due to an illegal tip retention policy, (4) liquidated damages, and (5) attorneys' fees and costs.

2.      Plaintiff alleges that, pursuant to the New York Labor Law ("NYLL"), she and similarly situated individuals are entitled to recover from Defendants: (1) unpaid wages; (2) unpaid minimum wages, including overtime, due to a fixed salary scheme; (3) unpaid wages, due to an illegal tip retention policy, (4) liquidated damages, (5) statutory penalties due to WTPA violations, and (6) attorneys' fees and costs.

3.      Plaintiff additionally alleges that Individual Defendant FADILA LYNDA OUHENIA-HUDSON unjustly enriched herself at the expense of Plaintiff and Class Members, and seeks to recover all damages sustained as a result of Individual Defendant LYNDA HUDSON's unjust enrichment.

## JURISDICTION AND VENUE

4.      This Court has jurisdiction over this controversy pursuant to 29 U.S.C. §216(b), 28 U.S.C. §§1331, 1337 and 1343, and has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. §1367.

5.      Venue is proper in the Southern District pursuant to 28 U.S.C. §1391.

## PARTIES

6.      Plaintiff, for all relevant time periods, was a resident of Queens County, New York.

7.    Corporate Defendants:

(a) LA LIBRAIRIE KITCHEN & CAFE L.L.C. is a domestic limited liability company organized under the laws of the State of New York, with a principal place of business and address for service of process located at 163 East 92nd Street, Store 2, New York, NY 10128.

(b) LA LIBRAIRIE DES ENFANTS LLC is a domestic limited liability company organized under the laws of the State of New York, with a principal place of business and address for service of process located at 163 East 92nd Street, New York, NY 10128.

8.    Individual Defendant FADILA LYNDA OUHENIA-HUDSON is the principal and owner of both Corporate Defendants. At all relevant times, Individual Defendant FADILA LYNDA OUHENIA-HUDSON exercised control over the terms and conditions of the employments of Plaintiff as well as FLSA Collective Plaintiffs and Class Members who worked at La Librairie des Enfants and La Librairie Kitchen & Cafe. Individual Defendant FADILA LYNDA OUHENIA-HUDSON exercised the power and authority to (i) fire and hire, (ii) determine rate and method of pay, (iii) determine work schedules and (iv) otherwise affect the quality of employment of Plaintiff as well as FLSA Collective Plaintiffs and Class Members who worked at La Librairie des Enfants and La Librairie Kitchen & Cafe.

9.    At all relevant times, Defendants collectively owned and operated a two (2) store enterprise which operates at the following locations:

(a) 163 East 92nd Street, Store 1, New York, NY 10128 ("La Librairie des Enfants");

(b) 163 East 92nd Street, Store 2, New York, NY 10128 ("La Librairie Kitchen & Cafe").

(together, the "Libraries").

10.      The Libraries, recently closed, were operated by Defendants as a single integrated enterprise. Specifically, The Libraries were engaged in related activities, shared common ownership and had a common business purpose. The Libraries were commonly owned through the common control of Individual Defendant LYNDA HUDSON, who holds an executive position in both entities and has the power to make binding decisions for both entities.

(a) At all relevant times, the Libraries were located directly next to each other and shared the same address.

(b) A blogpost on the Libraries, by Little Shop on Main Street, reveals the Libraries' connection in business purpose as well as identifies Individual Defendant FADILA LYNDA OUHENIA-HUDSON as the common owner of the Libraries. *See* **Exhibit A**;

(https://littleshoponmainstreet.wordpress.com/2018/04/10/la-librairie-des-enfants-163-east-92nd-street-new-york-ny-10128/). La Librairie des Enfants was a bookstore that catered to children and La Librairie Kitchen & Café was a bookstore that catered to adults. *Id.* Defendants' intent was to encourage their target demographic, families, to visit *both* Libraries by dividing the content of the two Libraries between adults and children. Further, both Libraries specialized in French literature. The Libraries therefore shared a common business purpose, ownership, and management.

(c) La Librairie des Enfants provided outdoor seating in front of its storefront for Defendants' customers who wanted to order, or already ordered in person, food and/or beverages from La Librairie Kitchen & Café. *See* **Exhibit B**. As a result,

servers of La Librairie Kitchen & Café had to serve customers dining on the premises of La Librairie des Enfants. The Libraries therefore shared an interrelation in operations and labor relations as well as common ownership.

(d) After La Librairie des Enfants closed down in or around January 2024, a notice was posted by Defendants on its' entrance which redirected customers to La Librairie Kitchen & Café. *See* **Exhibit C**. Additionally, this notice reveals that classes and memberships were transferrable between the two Libraries. *Id.* The Libraries therefore had an interrelation in operations as well as common ownership and management.

(e) Individual Defendant FADILA LYNDA OUHENIA-HUDSON managed employees of both Libraries, and personally paid employees of both Libraries their weekly wages in cash. There were no other managers of the Libraries other than Individual Defendant FADILA LYNDA OUHENIA-HUDSON. Individual Defendant FADILA LYNDA OUHENIA-HUDSON worked at, supervised, and managed both Libraries almost every day they were open. The Libraries therefore had common management.

11. Although Plaintiff did not work for both Libraries, and only for the dining services of La Librairie Kitchen & Cafe, both entities are still appropriately named in the Complaint through the theory of a "single integrated enterprise". Defendants' Libraries shared: (i) common ownership by Individual Defendant FADILA LYNDA OUHENIA-HUDSON, as advertised through articles and blogposts, (ii) interrelation of operations as shown through the shared dining spaces and transferrable classes and memberships, (iii) centralized control of labor relations as shown through their common sole control of labor relations by Individual Defendant

FADILA LYNDA OUHENIA-HUDSON; and (iv) common management by Individual Defendant FADILA LYNDA OUHENIA-HUDSON.

12.     Defendants' Libraries share an adequate amount of commonalities and purposes which clearly classifies them as a "single intergraded enterprise."

13.     At all relevant times, each Corporate Defendant was and continues to be an "enterprise engaged in commerce" within the meaning of the FLSA and the NYLL.

14.     At all relevant times, the work performed by Plaintiff, FLSA Collective Plaintiffs, and Class Members was directly essential to the business operated by Defendants.

## FLSA COLLECTIVE ACTION ALLEGATIONS

15.     Plaintiff brings claims for relief as a collective action pursuant to FLSA Section 16(b), 29 U.S.C. § 216(b), on behalf of all non-exempt employees, including servers, cashiers, bussers, food runners, cooks, associates, and dishwashers, among others, employed by Defendants on or after the date that is six years before the filing of the Complaint in this case as defined herein (herein, "FLSA Collective Plaintiffs").

16.     At all relevant times, Plaintiff and the other FLSA Collective Plaintiffs are and have been similarly situated, have had substantially similar job requirements and pay provisions, and are and have been subjected to Defendants' decisions, policies, plans, programs, practices, procedures, protocols, routines, and rules, all culminating in a willful failure and refusal to pay Plaintiff and FLSA Collective Plaintiffs their proper wages, including their overtime premiums at one and a half times their regular rates for all hours worked over forty (40) in a workweek, due to Defendants' decisions, policies, plans, programs, practices, procedures, protocols, routines, and rules, all culminating in a willful failure and refusal to pay them their proper wages, including overtime, due to a fixed salary and illegal tip retention.

17.     The claims for relief are properly brought under and maintained as an opt-in collective action pursuant to § 16(b) of the FLSA, 29 U.S.C. 216(b). The FLSA Collective Plaintiffs are readily ascertainable. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided to FLSA Collective Plaintiffs via first class mail to the last address known to Defendants.

## RULE 23 CLASS ALLEGATIONS

18.     Plaintiff brings claims for relief pursuant to the Federal Rules of Civil Procedure ("F.R.C.P.") Rule 23, on behalf of all non-exempt employees, including servers, cashiers, bussers, food runners, cooks, associates, and dishwashers, among others, employed by Defendants on or after the date that is six years before the filing of the Complaint in this case as defined herein (the "Class" or "Class Members").

19.     The Class Members are readily ascertainable. The number and identity of the Class Members are determinable from the records of Defendants. The hours assigned and worked, the position held, and rates of pay for each Class Member may also be determinable from Defendants' records. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided by means permissible under F.R.C.P. 23.

20.     The proposed Class is so numerous such that a joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court. Although the precise number of such persons is unknown because the facts on which the calculation of that number rests presently within the sole control of Defendants, there is no doubt that there are more than forty (40) members of the Class.

21.     Plaintiff's claims are typical of those claims that could be alleged by any member of the Class, and the relief sought is typical of the relief, which would be sought by each member of the Class in separate actions. All the Class Members were subjected to the same corporate practices by Defendants, as alleged herein, of Defendants' (1) failure to pay wages, (2) failure to pay minimum wages, (3) failure to pay all tips due to an illegal tip retention policy, (4) failure to provide proper wage and hour notices, at dates of hiring and annually thereafter, per requirements of the New York Labor Law, and (5) failure to provide proper wage and hour statements, per requirements of the New York Labor Law. Defendants' corporate-wide policies and practices affected all Class Members similarly, and Defendants benefited from the same type of unfair and/or wrongful acts as to each Class Member. Plaintiff and other Class Members sustained similar losses, injuries, and damages arising from the same unlawful policies, practices and procedures of Defendants.

22.     Plaintiff is able to fairly and adequately protect the interests of the Class and has no interests antagonistic to the Class. Plaintiff is represented by attorneys who are experienced and competent in both class action litigation and employment litigation and have previously represented plaintiffs in wage and hour cases.

23.     A class action is superior to other available methods for the fair and efficient adjudication of the controversy – particularly in the context of the wage and hour litigation where individual class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants. Class action treatment will permit a large number of similarly situated persons to prosecute common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender. Because losses, injuries and damages suffered by each of the individual Class

Members are small in the sense pertinent to a class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual Class Members to redress the wrongs done to them. On the other hand, important public interests will be served by addressing the matter as a class action. The adjudication of individual litigation claims would result in a great expenditure of Court and public resources; however, treating the claims as a class action would result in a significant saving of these costs. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the Class, establishing incompatible standards of conduct for Defendants and resulting in the impairment of class members' rights and the disposition of their interests through actions to which they were not parties. The issues in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

24.     Defendants and other employers throughout the state violate the New York Labor Law. Current employees are often afraid to assert their rights out of fear of direct or indirect retaliation. Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment. Class actions provide class members who are not named in the Complaint a degree of anonymity, which allows for the vindication of their rights while eliminating or reducing these risks.

25.     There are questions of law and fact common to the Class which predominate over any questions affecting only individual class members, including:

> (a) Whether Defendants employed Plaintiff and the Class within the meaning of the New York Labor Law;

(b) What are and were the policies, practices, programs, procedures, protocols and plans of Defendants regarding the types of work and labor for which Defendants did not pay Plaintiff and Class Members properly;

(c) At what common rate, or rates subject to common methods of calculation, were and are Defendants required to pay Plaintiff and Class Members for their work;

(d) Whether Defendants properly notified Plaintiff and Class Members of their hourly rates and overtime rates;

(e) Whether Defendants compensated wages to Plaintiff and Class Members for all hours they worked;

(f) Whether Defendants unlawfully retained tips from Plaintiff and Class Members;

(g) Whether Defendants provided Plaintiff and Class Members with proper wage and hour notices, at their dates of hiring and annually, per requirements of the New York Labor Law;

(h) Whether Defendants provided Plaintiff and Class Members with proper wage statements with each payment of wages, as required by New York Labor Law;

(i) Whether Defendants paid Plaintiff and Class Members the New York State minimum wage for all hours worked; and

(j) Whether Defendants properly compensated overtime premiums to Plaintiff and Class Members for their overtime hours worked under New York State law.

## **STATEMENT OF FACTS**

### i.   **Plaintiff's Employment Background**

26.    On or around September 28, 2022, Plaintiff was hired by Defendants to work as a Server at Defendants' La Librairie Kitchen & Café, located at 163 East 92nd Street, Store 2,

New York, NY 10128.  Plaintiff's employment with Defendants was terminated on or around April 5, 2023.

27.    Throughout her employment, Plaintiff was scheduled by Defendants to work five (5) days per week, for eight (8) hours per day, for a total of forty (40) hours per week. Plaintiff was always scheduled to work from 9:00 a.m. to 6:00 p.m.

28.    Throughout her employment, Plaintiff was paid by Defendants at various and random amounts between $100.00 and $200.00 per week, for all hours worked. At all relevant times, Defendants paid FLSA Collective Plaintiffs and Class Members at similar rates.

29.    Throughout her employment, Defendants regularly failed to pay Plaintiff any weekly wages at all. Defendants similarly failed to sometimes pay FLSA Collective Plaintiffs and Class Members their weekly wages.

**ii.  Plaintiff's Tip Retention Claim**

30.    Throughout their employments, Plaintiff, FLSA Collective Plaintiffs, and Class Members were subjected to Defendants' unlawful tip retention policy, in violation of the FLSA and the NYLL.

31.    Throughout her employment, Plaintiff regularly personally observed manager and owner Individual Defendant FADILA LYNDA OUHENIA-HUDSON personally retain all cash tips that were meant to be distributed to Plaintiff. FLSA Collective Plaintiffs and Class Members similarly had their cash tips retained.

32.    Further, throughout her employment, Plaintiff never received any of her credit card tips from Defendants. Defendants therefore additionally retained all of Plaintiff's credit card tips. FLSA Collective Plaintiffs and Class Members similarly had their credit card tips retained.

33.     Plaintiff's, FLSA Collective Plaintiffs' and Class Members' tips and gratuities are covered under the meaning of § 196-d of the NYLL. In New York, "[n]o employer or his agent or an officer or agent of any corporation, or any other person shall demand or accept, directly or indirectly, any part of the gratuities and other surcharges or fees, received by an employee, or retain any part of a gratuity or of any charge purported to be a gratuity for an employee." § NYLL 196-d.

34.     Further, Defendants failed to provide customers with an explicit written statement that tips, surcharges, service fees, and gratuities left on tables or credit card slips would be retained by Defendants. Defendants' failure to provide notice of their retention of tips from tipped employees was inadequate to satisfy the requirements of *Sarmiento v. World Yacht Inc.*, 10 N.Y.3d 70 (2008).

35.     Plaintiff was required to perform the duties of a (i) hostess, (ii) server, (iii) busser, (iv) food runner, (v) expediter, (vi) cook, (vii) barista, (viii) cashier, (ix) stocker, and (x) dishwasher. Plaintiff, who performed all of these duties and services for Defendants and their customers, received 0% of her tips, and Individual Defendant LYNDA HUDSON, who merely supervised Plaintiff, retained 100% of Plaintiff's tips.

36.     At all relevant times, Defendants knowingly and willfully operated their business with a policy of unlawfully retaining tips from Plaintiff, FLSA Collective Plaintiffs, and Class Members, in violation of the FLSA and the NYLL.

### iii. Plaintiff's Unpaid Minimum Wages Claim

37.     At all relevant times, Plaintiff, FLSA Collective Plaintiffs, and Class Members were subjected to Defendants' failure to pay minimum wages, in violation of the FLSA and the NYLL.

38.     When Plaintiff was hired, Defendants offered to compensate her at an hourly rate of $18.00 per hour.

39.     However, once Plaintiff started working, she was never paid by Defendants at this rate. Instead, Defendants would compensate Plaintiff at various amounts between $100.00 and $200.00 per week.

40.     At all relevant times, Defendants compensated Plaintiff at hourly rates that were below the Federal minimum wage of $7.50 per hour and the New York State minimum wage of $15.00 per hour.

41.     Because Plaintiff was always scheduled to work 40 hours per week, Defendants compensated Plaintiff at hourly rates between $2.50 ($100/40) per hour and $5.00 ($200/40) per hour. Defendants paid Plaintiff as low as one third of the Federal minimum wage.

42.     Additionally, Plaintiff was required to stay past her shift five (5) to ten (10) minutes every day, and to stay until 8:00 p.m. once a month to work at Defendants' French lessons, for a total of fifty-five (55) to eighty (80) minutes every week. As Plaintiff was scheduled to work forty (40) hours a week, all the post-shift hours worked were overtime hours. There was never an agreement by Plaintiff, FLSA Collective Plaintiffs, or Class Members that this fixed salary scheme would cover overtime hours.

43.     At all relevant times, Defendants compensated FLSA Collective Plaintiffs and Class Members at similar rates that were below the Federal and New York State minimum wages.

44.     At all relevant times, Defendants knowingly and willfully operated their business with a policy of failing to pay the Federal and New York State minimum wages to Plaintiff, FLSA Collective Plaintiffs, and Class Members, in violation of the FLSA and the NYLL.

### iv. Plaintiff's Unpaid Wages Claim

45.    Throughout their employments, Plaintiff, FLSA Collective Plaintiffs, and Class Members were subjected to Defendants' policy of failing to pay weekly wages, in violation of the FLSA and the NYLL.

46.    Throughout Plaintiff's employment, Defendants regularly failed to pay Plaintiff any weekly wages for a workweek, despite having required Plaintiff to work 40 hours these workweeks.

47.    Defendants similarly regularly failed to pay FLSA Collective Plaintiffs and Class Members any weekly wages for weeks they actually worked.

48.    At all relevant times, Defendants knowingly and willfully operated their business with a policy of failing to compensate any weekly wages to Plaintiff, FLSA Collective Plaintiffs, and Class Members for weeks they worked, in violation of the FLSA and the NYLL.

### v. Plaintiff's WTPA Violation Claims

49.    At all relevant times, Plaintiff and Class Members never received a wage notice from Defendants. They also did not receive any wage statements from Defendants.

50.    In violation of the Wage Theft Protection Act ("WTPA")—incorporated into NYLL—Defendants knowingly and willfully operated their business with a policy of not providing wage notices to Plaintiff and Class Members at the beginning of their employment with Defendants.

51.    Defendants further violated the WTPA by failing to provide Plaintiff and Class Members with any wage statements.

52.     In failing to provide any wage statements and notices, Defendants have failed to comply with the law in a manner that entails a concrete harm to an interest identified by the New York State legislature. As one Court observed:

> Here, Plaintiffs allege that Defendants failed to furnish them with proper wage notices and statements, as required by NYLL §§ 195(1) and 195(3). These provisions were enacted as part of New York's Wage Theft Prevention Act ("WTPA"), N.Y. Lab. Law § 195, which sought "to expand the rights of employees to seek civil and criminal avenues of remedy for their employers failing to follow labor law appropriately and the specifications therein." N.Y. Spons. Mem., 2010 S.B. 8380. More specifically, the New York State Assembly passed the WTPA to address studies showing that a large number of employees were not being paid the wages owed to them, and that many employers were not adequately informing their employees of their wages and how they are calculated in language the employees could understand. *Id.* The New York State Assembly opined that existing penalties did not adequately deter employers from paying less than the wages owed, and stated that the WTPA would dramatically change this by increasing penalties for violating employees' rights. *Id.*

*Imbarrato v. Banta Mgmt. Servs.*, 2020 U.S. Dist. LEXIS 49740, *21-22 (S.D.N.Y. March 20, 2020)

53.     Here, Defendants' failure goes beyond generating a risk of harm to Plaintiff and Class Members. Defendants' conduct actually harmed Plaintiff and Class Members. Defendants' failure to provide wage notices and paystubs listing all hours actually worked and rates of pay, including overtime hours and overtime rates, deprived employees of the ability to contest the pay provided by Defendants, allowed Defendants to hide their wrong-doings, and necessitated the current litigation to vindicate Plaintiff's and Class Members' rights. This conduct ensured Defendants' ability to further delay providing proper compensation to low wage earners entitled to protection under federal and state law. Defendants' failure to provide wage notices and wage statements to employees allowed Defendants to hide their responsibility and deprive employees of timely compensation.

54.    Had Defendants provided any wage statements to Plaintiff and Class Members which accurately listed the total number of hours Plaintiff and Class Members actually worked and their proper pay rates, as required by law, Defendants would have had to either (a) increase employees' wages to correspond to the hours they actually worked or (b) forthrightly acknowledge, by way of the wage statement, that the employee's wages did *not* correspond to the hours the employees actually worked. Either possibility would have allowed Plaintiff and Class Members to vindicate their rights under the NYLL. The deprivation of these possibilities therefore constitutes an injury.

55.    The failure to provide any wage notices and wage statements continues to result in delayed payment of all proper wages owed to Plaintiff and Class Members. This delayed payment caused Plaintiff and Class Members to struggle to pay bills and other debts.

56.    The direct effect of understating the number of hours an employee worked is to reduce the wages that employees are listed as having earned on their wage statements. The direct effect of this, in turn, is to reduce the employee earnings that the employer later reports to the IRS through the employee's W-2 form, as such information is derived from the information on employees' wage statements. *See Mills v. Mills*, 2021 Minn. Dist. LEXIS 200, *5 (Minn. Dist. Ct., Anoka County, Tenth Judicial District May 20, 2021) ("Petitioner's gross annual income, based on her 2020 W-21 and paystub dated 12/24/20, is $130,321.30"); T.F. v. N.F., 820 N.Y.S.2d 846, 846 (Sup. Ct., Suffolk Cty., June 22, 2006) ("In 2005 the plaintiff earned $ 133,086 as reflected on his final year paystub and W-2").[1]

---

[1] It is true that the wages reported on W-2 forms are not always precisely identical to those listed on an employees' last paystub for the year. One reason for is, as the IRS explains, that "W-2 wages include: (i) the total amount of wages as defined in section 3401(a); (ii) the total amount of elective deferrals (within the meaning of section 402(g)(3)); (iii) the compensation deferred under section 457; and (iv) the amount of designated Roth contributions (as defined in section 402A)." https://www.irs.gov/pub/irs-drop/rp-19-11.pdf. However, the possibility, that wages listed on a W-2 might be affected by such considerations does not change the fact that the base wages on the W-2 are derived from paystubs. The paystub processing service *realcheckstubs* explains: "A pay stub contains crucial

57.     The effect of reporting reduced wages on an employees' W-2 is, in turn, to reduce the amount of social security benefits available to the employee, as an employee's entitlement to benefits reflects how much money he or she is reported as having contributed to the social security system. *See McGauran v. Soc. Sec. Comm'n*, 2001 U.S. Dist. LEXIS 3187, *7 (N.D. Cal. March 19, 2001) ("Social security benefits are based upon the worker's earnings as reported to the [SSA] . . . [and] the worker's earnings are used to determine insured status for entitlement to retirement and to calculate cash benefit rates." (quoting Social Security Administration, Handbook § 1400 (1997)); *Coward v. Zurich Am. Ins. Co.*, 2011 U.S. Dist. LEXIS 74543, *3 (N.D. Ill. July 8, 2011) ("Under the Social Security statute, entitlement depends on 'the total of the wages paid . . . to an individual in a calendar year.'") (quoting 42 U.S.C. § 413(a)(2)(A)(ii)).

58.     "In the wake of the Supreme Court's decision in *TransUnion*, courts in this Circuit have held that plaintiffs lack standing to bring wage notice and statement claims under the NYLL absent any concrete, downstream consequences of the recordkeeping violation." *Chen v. Lilis 200 W. 57th Corp.*, 2023 U.S. Dist. LEXIS 38163, *18 (S.D.N.Y. Mar. 7, 2023). "On the other hand, 'allegations' that go 'beyond asserting a bare statutory violation and sufficiently allege concrete harm' resulting from 'the underpayment of wages' pass muster because 'monetary injury is a concrete harm sufficient for purposes of Article III standing.'" *Thompson v. Elev8 Ctr. N.Y.*, LLC, 2023 U.S. Dist. LEXIS 122504, *21 (S.D.N.Y. July 17, 2023) (quoting *Mateer v. Peloton Interactive, Inc.*, 2022 U.S. Dist. LEXIS 125017, *4 (S.D.N.Y. July 14, 2022)).

---

information that assists in calculating W2 wages. Paystub provides gross wages, deductions, taxes withheld, and other income-related data. Individuals gather the necessary figures required for accurate W2 calculation by referring to the pay stub." https://www.realcheckstubs.com/blog/paystubs/6-steps-how-to-calculate-w-2-wages-from-paystub.

59.    Here, it is clear that Defendants' failure to provide Plaintiff and Class Members with any wage statements entailed "concrete, downstream consequences" involving monetary injury. Had the number of hours been accurately reported for a given pay period, Defendants would have correspondingly increased the wages due for that period, which in turn would have been reflected in the W-2s that Defendants were supposed to submit to the IRS on behalf of Plaintiff and Class Members. That, in turn, would have increased Plaintiff's and Class Members' entitlement to social security benefits. Because the inaccuracy prevented this outcome, it constitutes an injury sufficient to provide Plaintiff with Article III standing.

60.    Courts agree that the misreporting of wages constitutes a concrete injury cognizable under Article III:

> The Seventh Circuit in *Calderon* squarely addressed FICA standing. The plaintiffs in *Calderon* were former employees alleging the employer failed to pay their FICA taxes. 999 F.2d at 1105-06. The Seventh Circuit found that the plaintiffs lacked standing to compel the employer to pay their FICA taxes because "[b]enefits do not. . . depend on whether the employer actually paid the taxes." *Id*. at 1106. Plaintiffs could, however, enforce FICA's reporting requirement because it is the reporting of income that triggers benefits, and losing benefits is an injury under *Lujan*. *Id*. Whether the employer in *Calderon* made FICA payments on the plaintiffs' behalf had no bearing on the plaintiffs' entitlement to benefits. *Id*. "[T]he plaintiff's real interest lies in ensuring that the [employer] make the proper reports of their income." *Id*.

*Coward*, 2011 U.S. Dist. LEXIS 74543, at *3-4.

61.    The case at bar is somewhat different from *Coward* inasmuch as Defendants actually underpaid Plaintiff and other employees rather than merely misreporting their income. But this distinction has no bearing on the question of Article III standing, since it is still the case that "it is the reporting of income that triggers benefits, and losing benefits is an injury." *Id*. Plaintiff and Class Members lost benefits by virtue of how Defendants failed to report their income, and how Defendants failed to report employees' income was the direct outcome of the

18

inaccuracies in employees' wage statements. That is why "Plaintiffs have standing to enforce the statutory reporting requirements" imposed by the WTPA. *Calderon v. Witvoet*, 999 F.2d 1101, 1106 (7th Cir. 1993).

62.     Whether or not any Class Members are presently eligible for social security benefits is legally immaterial. *See id.* ("Although only citizens and aliens residing in the United States may receive benefits, 42 U.S.C. § 402(t), plaintiffs may eventually fulfill this requirement and therefore are entitled to keep their Social Security accounts accurate.").

63.     The *Calderon* court stressed that an employee's interest in ensuring that an employer properly report the employee's income is amplified by the difficulty of persuading the government to correct errors:

> The practical difficulty is that eligibility for Social Security benefits presumptively depends on reports that employers send to the government. A worker who seeks credit for unreported income bears the burden of proof, 42 U.S.C. § 405(c)(3), (4), which will be hard to carry if the employer has not furnished the customary documentation. The government believes employers who report earnings, because these reports are costly to make--they entail paying a substantial tax. The government tends not to believe undocumented claims by employees, because these claims are essentially costless yet could establish entitlement to large pensions or disability benefits.

> All of this means that the plaintiffs' real interest lies in ensuring that the Witvoets make the proper reports of their income. *Id.*

64.     Here, the problem is not merely challenging but insurmountable. Plaintiff and Class Members cannot even attempt to have their earnings report corrected because Defendants failed to report their actual wages to the IRS. Because "[u]nder the Social Security statute, entitlement depends on 'the total of the wages paid . . . to an individual in a calendar year,'" Plaintiff was irreversibly injured with respect to his social security benefits as Defendants failed to send her W-2 to the IRS. *Coward*, 2011 U.S. Dist. LEXIS 74543, at *3 (N.D. Ill. July 8, 2011) (quoting 42 U.S.C. § 413(a)(2)(A)(ii)).

65.     Defendants knowingly and willfully operated their business with a policy of failing to provide Plaintiff, FLSA Collective Plaintiffs, and Class Members with wage notices and accurate wage statements, in violation of the NYLL.

### vi. Plaintiff's Unjust Enrichment Claim

66.     As factually described above, Individual Defendant personally retained all tips and portions of wages from Plaintiff and Class Members. Through her direct retention of tips and wages, Individual Defendant unjustly enriched herself at the expense of Plaintiff and Class Members.

67.     It is apparent that Individual Defendant retained Plaintiff's and Class Members' wages, because it was Defendants' policy that Individual Defendant personally paid employees their weekly wages, in cash. Because employees were only receiving one third to two thirds of their properly owed wages, the missing wages were clearly retained by Individual Defendant LYNDA HUDSON.

68.     The circumstances are such that it would be inequitable to allow Individual Defendant to retain the excess benefits she unlawfully gained from Plaintiff and Class Members without paying fair value for their work.

69.     Plaintiff retained Lee Litigation Group, PLLC to represent Plaintiff, FLSA Collective Plaintiffs, and Class Members in this litigation, and has agreed to pay the firm a reasonable fee for its services.

**STATEMENT OF CLAIM**

**COUNT I**

**VIOLATION OF THE FAIR LABOR STANDARDS ACT**

**(ON BEHALF OF PLAINTIFF AND FLSA COLLECTIVE PLAINTIFFS)**

70.     Plaintiff realleges and incorporates all the above allegations of this Complaint as fully set forth herein.

71.     At all relevant times, Defendants were and continue to be employers engaged in interstate commerce and/or the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a). Further, Plaintiffs and FLSA Collective Plaintiffs are covered individuals within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207 (a).

72.     At all relevant times, Defendants employed Plaintiff and FLSA Collective Plaintiffs within the meaning of the FLSA.

73.     At all relevant times, each Corporate Defendant had gross annual revenues in excess of $500,000.

74.     At all relevant times, Defendants had a policy and practice that failed to pay Plaintiff and FLSA Collective Plaintiffs the Federal minimum wage for all hours worked.

75.     At all relevant times, Defendants had a policy and practice that failed to pay Plaintiff and FLSA Collective Plaintiffs all weekly wages.

76.     At all relevant times, Defendants had a policy and practice that failed to pay Plaintiff and FLSA Collective Plaintiffs their proper tips, due to unlawful tip retention.

77.     Records, if any, concerning the number of hours worked by Plaintiff and FLSA Collective Plaintiffs and the actual compensation paid to Plaintiff and FLSA Collective Plaintiffs should be in the possession and custody of the Defendants. Plaintiff intends to obtain these

records by appropriate discovery proceedings to be taken promptly in this case and, if necessary, will then seek leave of Court to amend this Complaint to set forth the precise amount due.

78.    Defendants knew of and/or showed a willful disregard for the provisions of the FLSA as evidenced by their failure to compensate Plaintiff and FLSA Collective Plaintiffs their proper wages, including their proper wages and overtime premiums, when Defendants knew or should have known such was due.

79.    Defendants failed to properly disclose or apprise Plaintiff and FLSA Collective Plaintiffs of their rights under the FLSA.

80.    As a direct and proximate result of Defendants' willful disregard of the FLSA, Plaintiff and FLSA Collective Plaintiffs are entitled to liquidated (i.e., double) damages pursuant to the FLSA.

81.    Due to the intentional, willful and unlawful acts of Defendants, Plaintiff suffered damages in an amount not presently ascertainable of unpaid wages, overtime wages and liquidated damages.

82.    Plaintiff and FLSA Collective Plaintiffs are entitled to an award of their reasonable attorneys' fees and costs pursuant to 29 U.S.C. §216(b).

## COUNT II

## VIOLATION OF THE NEW YORK LABOR LAW

## (ON BEHALF OF PLAINTIFF AND CLASS MEMBERS)

83.    Plaintiff realleges and incorporates all the above allegations of this Complaint as fully set forth herein.

84.    At all relevant times, Plaintiff and Class Members were employed by the Defendants within the meaning of the New York Labor Law, §§2 and 651.

85.     Defendants failed to properly notify employees of their hourly pay rate and overtime rate, in direct violation of the New York Labor Law.

86.     Defendants willfully violated Plaintiff's and Class Members' rights by failing to pay them the lawful New York State minimum wage for all hours worked.

87.     Defendants willfully violated Plaintiff's and Class Members' rights by failing to pay them all weekly wages.

88.     Defendants willfully violated Plaintiff's and Class Members' rights by failing to pay them their proper tips, due to unlawful tip retention.

89.     Defendants failed to provide Plaintiff and Class Members with proper wage and hour notices, at their dates of hiring and annually, per requirements of the New York Labor Law.

90.     Defendants failed to provide Plaintiff and Class Members with proper wage statements with every payment as required by New York Labor Law § 195(3).

91.     Due to the Defendants' New York Labor Law violations, Plaintiff and Class Members are entitled to recover from Defendants their unpaid minimum wages, unpaid overtime wages, reasonable attorneys' fees, liquidated damages, statutory penalties, and costs and disbursements of this action, pursuant to New York Labor Law.

**COUNT III**

**UNJUST ENRICHMENT**

**(ON BEHALF OF PLAINTIFF AND CLASS MEMBERS)**

92.     Plaintiff realleges and incorporates all the above allegations of this Complaint as fully set forth herein.

93.     By virtue of the Defendant's conduct as alleged herein, and Plaintiff's and Class Members' performance of their agreed upon obligations to Defendants, Defendants were unjustly

enriched by (i) retaining Plaintiff's and Class Member's tips and wages, and (ii) Plaintiff's and Class Members' uncompensated labor.

94.     The circumstances are such that it would be inequitable to allow Defendants to retain the excess benefits they gained from Plaintiff and Class Members without paying fair value for their work.

95.     As a direct and proximate result of Defendants' retention of Plaintiff's and Class Members' tips and wages, Plaintiff and Class Members have sustained damages in an amount according to proof at trial.

96.     Defendants' wage and tip retention was done with malice and in conscious disregard of Plaintiff's and Class Members' rights, with the intent to cause financial injury to Plaintiff and Class Members. Plaintiff and Class Members are therefore entitled to an award of punitive damages against Defendants.

<u>**PRAYER FOR RELIEF**</u>

**WHEREFORE**, Plaintiff, on behalf of herself, FLSA Collective Plaintiffs, and Class Members, respectfully requests that this Court grant the following relief:

(a) A declaratory judgment that the practices complained of herein are unlawful under the FLSA, the NYLL, and New York State common law;

(b) An injunction against Defendants and their officers, agents, successors, employees, representatives and any and all persons acting in concert with them as provided by law, from engaging in each of the unlawful practices, policies and patterns set forth herein;

(c) An award of unpaid wages, due under the FLSA and the NYLL;

(d) An award of unpaid minimum wages, due under the FLSA and the NYLL;

(e) An award of disgorgement of all unlawfully retained tips, due under the FLSA and the NYLL;

(f) An award of liquidated and/or punitive damages as a result of Defendants' willful failure to pay wages pursuant to 29 U.S.C. § 216;

(g) An award of liquidated and/or punitive damages as a result of Defendants' willful failure to pay wages pursuant to the NYLL;

(h) An award of statutory penalties as a result of Defendants' failure to comply with New York Labor Law wage notice and wage statement requirements;

(i) Restitution and disgorgement of all amounts obtained by Individual Defendant as a result of her misconduct, together with interest thereon from the date of payment;

(j) An award of pre-judgment and post-judgment interests, costs, and expenses of this action together with reasonable attorneys' and experts' fees and statutory penalties;

(k) Designation of Plaintiff as Representative of the FLSA Collective Plaintiffs;

(l) Designation of this action as a class action pursuant to F.R.C.P. 23;

(m) Designation of Plaintiff as Representative of Class; and

(n) Such other and further relief as this Court deems just and proper.

## <u>JURY DEMAND</u>

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands trial by jury on all issues so triable as of right by jury.

Dated: October 3, 2024                        Respectfully submitted,
       New York, New York

                                                **LEE LITIGATION GROUP, PLLC**
                                                C.K. Lee (CL 4086)
                                                Anne Seelig (AS 3976)
                                                148 West 24th Street, 8th Floor
                                                New York, NY 10011
                                                Tel.: 212-465-1188
                                                Fax: 212-465-1181

                                                *Attorneys for Plaintiff,*
                                                *FLSA Collective Plaintiffs,*
                                                *and the Class*

                     By:       <u>/s/ *C.K. Lee*                         </u>
                                    C.K. Lee, Esq.